UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:     22-20269-CR-SCOLA/GOODMAN

UNITED STATES OF AMERICA,

vs.

CARLOS ORLANDO LEDESMA,
NADIA ESPERANZA LEDESMA,
OSMANI VALDIA PEREZ, and
ROBERTO MARRERO-CISNERO
_____/

### DEFENDANT'S NADIA E. LEDESMA'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

The Defendant, Nadia E. Ledesma, by and through undersigned counsel, files the following objections to Presentence Investigation Report (herein PSR), and objects as follows:

1. **Paragraph 58**

Defendant objects to the sophisticated means enhancement. For this enhancement to apply, two criteria must be met: (1) the offense conduct must be "especially complex or especially intricate . . . pertaining to the execution or concealment of an offense," USSG §2B1.1, comment. (n.9(B)), and (2) "the defendant *intentionally* engaged in or caused the conduct constituting

sophisticated means." USSG §2B1.1(b)(10)(C) (emphasis added). There is insufficient evidence that Defendant "intentionally engaged in or caused the conduct constituting sophisticated means." As set forth in Paragraph 49, Defendant merely acted as the freight forwarder and received only $48,064.79 from a scheme that allegedly encompassed over $11,179,500 in stolen engines. There was nothing "especially complex or especially intricate" in her conduct as a freight forwarder who realized barely 0.4% of the overall proceeds of the entire offense conduct. Thus, Defendant asks that this enhancement be removed from the PSR.

**Part E:** Defendant asks that the PSR identify one ground for a downward departure and another for a downward variance. With respect to the downward departure, the loss amount "substantially overstates the seriousness of the offense." USSG §2B1.1, comment. (n.21(C)). As previously noted, Defendant realized less than half of one percent of the proceeds of the offense conduct and otherwise merely acted as a freight forwarder.

Moreover, while Defendant agreed in her plea agreement that the "actual, probable or intended loss" was between $9.5 million and $25 million, Plea Agreement at ¶ 11 (Doc. 54), the Court should depart downward to the extent that amount includes "probable or intended loss" inasmuch as the same no longer is recognized as a measure of harm under the Guidelines.

As the U.S. District Court for the Northern District of Florida has held in light of recent U.S. Supreme Court precedent in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019):

> [I]t is clear that the Guidelines commentary defining "loss" to include "in-tended loss" is not due *Auer* deference. Section 2B1.1 is driven by "the amount of loss caused by the defendant's offense," which plainly means, as explained above, the economic, emotional and/or physical harm that actually occurred. **"Loss" cannot mean harm that never materialized.** Yet the Guidelines commentary broadens the term "loss" to include harm of precisely that nature by inserting "intended loss" into its definition. See U.S.S.G. § 2B1.1 at cmt. n.3(A)(ii). In doing so, the commentary does not "illuminate the meaning of 'loss,' but modifies it." And the modification is so far afield from any contextual zones of ambiguity inherent in the ordinary meaning of the word "loss" that the commentary is rendered plainly inconsistent with the text of § 2B1.1(b)(1). The Government has identified nothing in the structure, history or purpose of this guideline that supports such an expansive view of the term "loss." "Deference in [this] circumstance would permit the [Sentencing Commission], under the guise of interpreting a [Guideline], to create de facto a new [Guideline]." "*Auer* does not, and indeed could not, go that far." *See id*.

*United States v. Alford*, No. 3:21-cr-052, 2022 U.S. Dist. LEXIS 149494, *8-9 (N.D. Fla. Aug. 20, 2022) (citations omitted; emphasis added); *United States v. Dupree*, 57 F.4th 1269, 1273 (11th Cir. 2023) (holding that in light of *Kisor* "[b]ecause the

Guideline is unambiguous . . . we must not defer to the commentary's broader definition").

Finally, Defendant asks that Part E include as a ground for a two-level downward variance the fact that Defendant qualifies for the new Zero Point Offender adjustment recently promulgated by the U.S. Sentencing Commission and now pending before Congress. On April 5, 2023, the Commission promulgated several amendments to the Guidelines that will take effect on November 1, 2023, unless Congress acts to the contrary.[1] Among the amendments was one for "Zero Point Offenders."[2] This amendment provides a new two-level downward adjustment for those offenders with zero criminal history points and who also meet nine additional criteria. According to the Commission, "[r]ecidivism data analyzed by the Commission suggest that offenders with zero criminal history points ('zero-point' offenders) have considerably lower recidivism rates than other offenders, including lower recidivism rates than the offenders in Criminal History Category I with one

---

[1] *See* U.S. Sentencing Comm'n, *Amendments to the Guidelines (Preliminary)* (Apr. 5, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf. With now over 800 amendments promulgated by the Commission, Congress has acted only twice to disapprove of a promulgated amendment. One involved cocaine and the other money laundering, both in 1995. *See* Pub.L. No. 104-38, 109 Stat. 334 and 60 Fed. Reg. 25074.

[2] *Id.* at PDF page 71.

criminal history point."[3] The Commission also found "that 'zero-point' offenders were less likely to be rearrested than 'one point' offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category."[4] The Commission is currently considering whether to make such an amendment retroactive.[5] While the ZPO is pending before Congress, this Court may still consider the pending amendment as a ground for a variance. *See United States v. Miranda-Garcia*, 417 Fed. Appx. 895, 897 (11th Cir. 2011) (variance based on pending amendments to the U.S. Sentencing Guidelines is "discretionary"); *United States v. McMillan*, 863 F.3d 1053, 1058 (8th Cir. 2017) ("Although district courts are required to apply the guidelines in effect on the date of sentencing, they may consider pending amendments to the guidelines."); *United States v. Ruiz-Apolonio*, 657 F.3d 907, 917 (9th Cir. 2011) ("A sentencing court, of course, has the discretion to grant a variance from the Guidelines after promulgation but before adoption of a proposed amendment."); *United States v. Lua-Guizar*, 656 F.3d 563, 567 (7th Cir. 2011) ("the court could have considered the pending amendment").

---

[3] *Id.* (citation omitted).

[4] *Id.*

[5] *See* U.S. Sentencing Comm'n, *Issue for Comment: Retroactivity*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-IFC.pdf.

Respectfully submitted,

Renier Diaz de la Portilla, Esq.
Attorney for Defendant
Nadia Esperanza Ledesma
1481 NW 22nd Street
Miami, FL 33142
Office: 305-900-9311
Email: Renier@diazdelaportillalwyers.com


BY;     /s/ Renier Diaz de la Portilla
        Florida Bar No.: 39631